FILED
2022 MAR 30 PM 12:42
CLERK
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| E.F., individually and on behalf of L.F., a minor,<br><br>　　　　Plaintiffs,<br><br>v.<br><br>UNITED HEALTHCARE INSURANCE COMPANY, OXFORD HEALTH INSURANCE, INC., and UNITED BEHAVIORAL HEALTH d/b/a OPTUM,<br><br>　　　　Defendants. | **MEMORANDUM DECISION AND ORDER DENYING DEFENDANTS' MOTION TO DISMISS**<br><br>Case No. 2:21-cv-190-JNP-DBP<br><br>District Judge Jill N. Parrish<br><br>Magistrate Judge Dustin B. Pead |

This action arises under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.*, and is before the court on Defendants' motion to dismiss. Plaintiffs' complaint alleges two causes of action: (1) recovery of benefits under 29 U.S.C. § 1132(a)(1)(B), and (2) violation of the Mental Health Parity and Addiction Equity Act under 29 U.S.C. § 1132(a)(3). Defendants United Healthcare Insurance Company ("United"), Oxford Health Insurance, Inc. ("Oxford"), and United Behavioral Health d/b/a/ Optum ("UBH") (collectively, "Defendants") move to dismiss the complaint for failure to state a claim. Defendants argue that Plaintiffs' claims must fail because Plaintiffs did not file their claims in district court within the time limit specified by the Plan. For the following reasons, the court DENIES Defendants' motion to dismiss.

## BACKGROUND

This dispute involves the denial of benefits allegedly due to Plaintiffs under their ERISA employee group health benefit plan, Oxford's Direct HSA Plan ("the Plan"). The Plan is a fully-insured employee welfare benefits plan subject to the Employee Retirement Income Security Act

of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* The Plan requires that members provide "a notice of sickness or injury . . . within 20 days after it occurs." ECF No. 20-1, at 90. Defendants interpret this to mean that a member must submit a claim for benefits within twenty days from the last day of treatment. The Plan also requires that any lawsuit be brought "within three years from the expiration of the time within which proof of loss is required," i.e., within three years from the expiration of the claim-filing deadline. *Id.* at 98.

E.F. was a Plan participant at all times relevant to the claims in this case. Her daughter, L.F., was a Plan beneficiary. Although L.F. received medical care and treatment at two facilities, only one stay is at issue here. Specifically, L.F. received treatment for depression, anxiety, and disordered eating at Viewpoint Center ("Viewpoint") from December 27, 2017 to February 20, 2018. On January 29, 2018, UBH denied L.F.'s claim for benefits in connection with her treatment at Viewpoint due to a Plan exclusion. Plaintiffs completed the internal appeals process and received a final adverse appeal determination on April 16, 2019. A review of the final denial letter shows that it did not disclose the Plan's limitations period for seeking judicial review. Plaintiffs filed this case on March 26, 2021.

## LEGAL STANDARD

Dismissal of a claim under Federal Rule of Civil Procedure 12(b)(6) is appropriate where the plaintiff fails to "state a claim upon which relief can be granted." When considering a motion to dismiss for failure to state a claim, the court must "accept as true all well-pleaded factual allegations in the complaint and view them in the light most favorable to the plaintiff." *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

"Generally, a court considers only the contents of the complaint when ruling on a 12(b)(6) motion." *Berneike v. CitiMortgage, Inc.*, 708 F.3d 1141, 1146 (10th Cir. 2013). "Exceptions to this general rule include the following: documents incorporated by reference in the complaint; documents referred to in and central to the complaint, when no party disputes [their] authenticity; and matters of which a court may take judicial notice." *Id.* (citation omitted). Where "a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss." *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

## ANALYSIS

I. **DOCUMENTS SUBMITTED BY THE PARTIES**

Defendants submit two exhibits attached to a declaration by UBH employee Alexander Marsh, Jr.: (1) a copy of the Oxford HAS/Liberty Network Certificate of Coverage and (2) the April 16, 2019 final denial letter from UBH. Plaintiffs reference the denial letter and Plan documents in their complaint. And the contents of the plan documents and denial letters are central to Plaintiffs' claims. Plaintiffs do not contest the validity of the attached documents nor argue that they should not be considered. Under these circumstances, the court will take a limited look outside the complaint at the materials submitted by Defendants.

Plaintiffs submit a copy of an amicus brief filed by the Secretary of Labor in an Eleventh Circuit case. The amicus brief is not incorporated by reference, attached to, or referenced in the complaint. Accordingly, the court may only consider the amicus brief if it is apt for judicial notice. Courts are divided as to whether to take judicial notice of amicus briefs. *Compare New Eng. Health Care Emps. Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 500 n.2 (6th Cir. 2003) (taking

3

judicial notice of an amicus brief); *Serv. Emps. Int'l Union, Local 102 v. Cnty. of San Diego*, 60 F.3d 1346, 1357 n.3 (9th Cir. 1994) (supplemental opinion) (taking judicial notice of an amicus brief), *with Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*, 658 F.3d 936, 940 n.2 (9th Cir. 2011) (declining to take judicial notice of amicus brief). Because the court does not rely on the amicus brief in its order, it need not resolve whether it may take judicial notice of the amicus brief.

## II.    TIMELINESS

The main issue here is whether the Plan's three-year limitations provision applies to Plaintiffs' claims, given that the final denial letter that Plaintiffs received did not provide notice of the Plan's time limit for bringing legal action. ERISA does not specify a time limitation for private enforcement actions brought under 29 U.S.C. § 1132. *See Salisbury v. Hartford Life & Accident Ins. Co.*, 583 F.3d 1245, 1247 (10th Cir. 2009). Generally, courts "apply the most closely analogous statute of limitations under state law." *Id.* (citation omitted). But parties may contractually agree to a particular limitations provision for bringing an ERISA claim, which then supersedes the state statute of limitations, provided that the limit is reasonable. *Heimeshoff v. Hartford Life & Accident Ins. Co.*, 571 U.S. 99, 105-06 (2013); *Salisbury*, 583 F.3d at 1247 ("Choosing which state statute to borrow is unnecessary, however, where the parties have contractually agreed upon a limitations period." (citation omitted)).

Here, the Plan requires that participants file any civil action within three years from the deadline for filing a claim (which occurs twenty days after the last day of treatment). L.F. left Viewpoint on February 20, 2018, meaning that the Plan required Plaintiffs to file a claim for benefits with respect to treatment at Viewpoint no later than March 12, 2018 (i.e., twenty days after February 20, 2018). Accordingly, Plaintiffs had until March 12, 2021 to file a claim in this court. Plaintiffs did not file this case until March 26, 2021—fourteen days after the contractual

4

limitations period had run. Defendants argue that the court must dismiss this complaint as untimely because Plaintiffs failed to comply with the Plan's limitations provision.

Plaintiffs concede that they missed the three-year deadline. But Plaintiffs argue that the contractual limitations period is unenforceable because UBH's final denial failed to advise them of the Plan-imposed limitations period, in contravention of 29 C.F.R. § 2560.503-1(g)(1)(iv). Defendants counter that amendments to the ERISA regulations, effective April 1, 2018, clarify that notice of the plan limitations period is only required in final adverse benefit determination letters pertaining to claims for disability benefits, not health benefits. *See* 29 C.F.R. § 2560.503-1(j)(4)(ii).

  A.  ***Plain Language of the ERISA Regulations***

ERISA grants the Department of Labor authority to promulgate regulations governing the ERISA claims procedure. *See* 29 U.S.C. § 1133. The two regulatory provisions at issue here are 29 C.F.R. § 2560.503-1(g)(1)(iv) and 29 C.F.R. § 2560.503-1(j)(4)(ii).

Subsection (g)(1)(iv) states that

> the plan administrator shall provide a claimant with written or electronic notification of any adverse benefit determination [which] shall set forth, in a manner calculated to be understood by the claimant—[a] description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefits determination on review.

A number of courts have interpreted subsection (g)(1)(iv) to require that any adverse benefit determination—colloquially called denial letters—include a notification of the contractual time limits for filing an action in district court. *See Santana-Díaz v. Metro. Life Ins. Co.*, 816 F.3d 172, 180 (1st Cir. 2016); *Mirza v. Ins. Adm'r of Am., Inc.*, 800 F.3d 129, 136 (3d Cir. 2015); *Moyer v. Metro. Life Ins. Co.*, 762 F.3d 503, 505 (6th Cir. 2014); *Stacy S. v. Boeing Co. Emp. Health Benefit Plan (Plan 626)*, 344 F. Supp. 3d 1324, 1334 (D. Utah 2018); *William G. v. United Healthcare*,

5

No. 1:16-cv-00144-DN, 2017 WL 2414607, at *9 (D. Utah June 2, 2017); *John H. v. United Healthcare*, No. 1:16-cv-00110-TC, ECF No. 26, at *7 (D. Utah Apr. 26, 2017).

Subsection (j)(4)(ii) states that in the case of an adverse benefit determination on review, the plan administrator should provide a statement of the claimant's right to bring legal action and

> [i]n the case of a plan providing disability benefits . . . the statement of the claimant's right to bring an action under section 502(a) of the Act shall also describe any applicable contractual limitations period that applies to the claimant's right to bring such an action, including the calendar date on which the contractual limitations period expires for the claim.

Congress adopted subsection (j)(4)(ii) effective April 1, 2018. When the above cases were decided, section (j) did not contain any language concerning notice of limitations provisions. Thus, the pre-April 2018 regulations only mentioned notice of time limits in section (g), not section (j). Defendants argue that the reasoning in *Stacy S.*, *William G.*, and *John H.* no longer applies because, Defendants claim, the cases relied on reading section (g) and section (j) together, and any changes to section (j) thus require a new interpretation.

But the reasoning in these cases withstands the amendments to section (j). As a threshold matter, the plain language of subsection (g)(1)(iv) stands on its own. The First, Third, and Sixth Circuits—considering section (g) on its own—all held that a plain reading of section (g) indicates that "any adverse benefit determination," which includes final denial letters, must include a notice of the plan's limitations provision. *Santana-Díaz*, 816 F.3d at 180; *Mirza*, 800 F.3d at 136; *Moyer*, 762 F.3d at 505. Each court's interpretation hinged on the word "including." In essence, the courts determined that reading the regulation as having two unrelated requirements—a requirement to provide notice of the limitations provision for internal review and a separate requirement to state the claimant's right to bring a civil action—would require the court to replace the word "including" with "and." But the circuit courts rejected this reading. They instead held that "including"

6

necessarily modifies the preceding clause, "a description of the plan's review procedures and the time limits applicable to such procedures," which indicates that the regulations consider a civil action one of the "review procedures" for which the plan administrator must disclose the applicable time limits. *See Mirza*, 800 F.3d at 134 (reasoning that the use of "including" signified that "civil actions are logically one of the review procedures envisioned by the Department of Labor"); *Santana-Díaz*, 816 F.3d at 180 ("[W]e think the term 'including' indicates that an ERISA action is considered one of the 'review procedures' and thus notice of the time limit must be provided." (citation omitted)); *Moyer*, 762 F.3d at 505 ("The claimant's right to bring a civil action is expressly included as a part of those procedures for which applicable time limits must be provided.").

Congress has not altered subsection (g)(1)(iv) since these courts explained the provision's plain meaning. As such, this court concludes that the word "including" indicates that the regulation requires the plan administrator to disclose the plan's applicable time limits for legal action in any denial letter. This reading of subsection (g)(1)(iv) aligns with ERISA's goal "to provide claimants with sufficient information to prepare adequately for any further administrative review or for an appeal to the federal courts."[1] *Brown v. J.B. Hunt Transp. Servs., Inc.*, 586 F.3d 1079, 1086 (8th

---

[1] Many courts have noted the correlation between the policy goals of ERISA and this reading of subsection (g)(1)(iv). *See Santana-Díaz*, 816 F.3d at 181 ("Our reading of the regulation is furthermore in keeping with 29 U.S.C. § 1133's purpose of ensuring a fair opportunity for judicial review, and with ERISA's overall purpose as a remedial statute."); *Mirza*, 800 F.3d at 136 ("One of the purposes of 29 U.S.C. § 1133, which is the statutory foundation for the regulations governing claims procedures, is to provide claimants with adequate information to ensure effective judicial review. The disclosure of a reduced time limitation in a denial letter ensures a fair opportunity to review by making it readily apparent to a claimant that he or she may have only one year—or even much less than that—before the courthouse doors close." (citations omitted)); *Moyer*, 762 F.3d at 507 ("The exclusion of the judicial review time limits from the adverse benefit determination letter was inconsistent with ensuring a fair opportunity for review . . . ."); *Novick v. Metro. Life Ins. Co.*, 764 F. Supp. 2d 653, 662 (S.D.N.Y. 2011) ("[P]lan administrators and fiduciaries are supposed to ensure that plan participants are able to pursue their rights under ERISA and assist those participants in such pursuits . . . [but] the lack of any statement in any benefits denial letter explaining that the right to judicial review expires six months after denial on appeal does not

Cir. 2009). Claimants are more likely to read a short denial letter, as opposed to a long, complex plan document. *Mirza*, 800 F.3d at 135 ("Which is a claimant more likely to read—a ninety-one page description of the entire plan or a five-page letter that just denied thousands of dollars in requested benefits?"); *Santana-Díaz,* 816 F.3d at 181 ("Claimants are obviously more likely to read information stated in the final denial letter, as opposed to included (or possibly buried) somewhere in the plan documents, particularly since . . . plan documents could have been given to a claimant years before his claim for benefits is denied."). It makes sense, then, that the Department of Labor recognized this reality and required plan administrators to disclose plan limitations provisions in easily comprehensible denial letters. Disclosure ensures claimants have the information they need to pursue their claims, while placing a minimal burden on administrators. [2]

What *Stacy S.*, *William G.*, and *John H.* grappled with, which the First, Third, and Sixth Circuits never addressed, is the tension that the plain language reading of section (g) creates in reading sections (g) and (j) together. The canons of statutory construction instruct that every word and every provision, if possible, should be given effect. And the *Stacy S.* court admits that, under the pre-2018 regulations, the plain language interpretation of section (g) "result[ed] in some duplication of requirements between [s]ections (g) and (j), namely the reasons for the adverse determination, the reference to the provision on which the determination is based, and the notification of the right to file a civil action." 344 F. Supp. 3d at 1335. Nevertheless, the court favored the plain language interpretation because the duplicative requirements reflected one of

---

comport with the statute's mandate that plan fiduciaries act for the exclusive purpose of providing benefits to participants." (citation omitted)).

[2] Without ruling on whether this case raises the following issue, the court also recognizes a concern raised by the First Circuit: If the court endorses Defendants' preferred interpretation, which does not require notification of the time limits for filing a federal lawsuit for health benefit denials, "plan administrators could easily hide the ball and obstruct access to the courts," which contravenes the purpose of ERISA. *Mirza*, 800 F.3d at 135.

8

Congress's goals in passing ERISA—emphasizing "the importance of disclosure of information to participants and ready access to federal courts." *Id.*

The April 2018 amendments do not affect that analysis. When reading section (g) and section (j) "in concert," the new subsection (j)(4)(ii) does not make the two subsections any more duplicative. *William G.*, 2017 WL 2414607, at *7. In fact, section (g) requires the plan administrator to provide a simple notice of the limitations provision for a civil action for any type of benefit determination. Subsection (j)(4)(ii), by contrast, imposes a more intricate notice requirement for disability benefits determinations, including notice of the applicable contractual limitations period *and* the calendar date on which the contractual limitations period expires. Presumably this heightened standard for disability claims reflects the Department of Labor's reasoned determination that "procedural safeguards and protections similar to those required for group health plans . . . [are] just as important, if not more important, in the case of claims for disability benefits." Claims Procedure for Plans Providing Disability Benefits, 81 Fed. Reg. 92316, 92318 (supplementary information regarding April 2018 amendments).

Far from undoing the analysis in *Stacy S.*, *William G.*, and *John H.*, the April 2018 amendments simply add a separate requirement for disability claims without disturbing the notice requirements for all benefit denials present in (g)(1)(iv). The *William G.* court's reasoning regarding (j)(4)(i) applies with equal force to the new (j)(4)(ii) provision: "[A] *final* denial letter must meet the requirements of *both* [s]ubsection (g)(1)(iv) and [s]ubsection (j)(4)(i), thereby giving full effect to both regulations." 2017 WL 2414607, at *6. Subsection (j)(4)(i), and now subsection (j)(4)(ii), "expands the requirements of [s]ubsection (g)(1)(iv) for final denial letters—it does not eliminate them." *Id.* In sum, subsection (j)(4)(ii) merely expands the requirements for final disability benefit denials, requiring that they include the calendar date on which the

contractual limitations period expires; it does not eliminate the separate notice requirement for all benefit denials contained in subsection (g)(1)(iv).

### B. *Policy Considerations*

The plain language of the regulation alone convinces the court that final denial letters must provide notice of contractual limitations provisions in order to later enforce such limitations in court. And the Department of Labor's own representations—while not binding on this court—confirm this view. The Department of Labor directly approved of the plain language interpretation of subsection (g)(1)(iv) explained above, even while promulgating the April 2018 regulations. The supplementary information about the April 2018 amendments provided by the Department of Labor states that "the Department agrees with the conclusion of those federal courts that have found that the current regulation fairly read requires some basic disclosure of contractual limitations periods in adverse benefit determinations." 81 Fed. Reg. 92316, 92331. And in fact, "in the Department's view, the statement of the claimant's right to bring a civil action under section 502(a) of ERISA following an adverse benefit determination on review would be incomplete and potentially misleading if it failed to include limitations or restrictions . . . on the right to bring such a civil action." *Id.*

Further, the Department makes clear that the April 2018 amendments intended to heighten procedural protections for disability claimants, not reduce protections for healthcare claimants. Defendants rely heavily on the argument that the April 2018 amendments clarify that the notification requirement applies only where a plan provides disability benefits, not healthcare benefits. But the Department of Labor's own commentary on the amendments undermines this argument.

First, the 2018 amendments imported protections from the health benefit plan context to the disability plan context. They specifically aimed "to re-examine the rules governing disability benefit claims" to make sure that "basic safeguards . . . necessary for a full and fair process" were available in the disability context, just as they already were in the healthcare context. *Id.* at 92316–17, 92331 ("[T]he final rule will revise and strengthen the current rules regarding claims and appeals applicable to ERISA-covered plans providing disability benefits primarily by adopting several of the new procedural protections and safeguards made applicable to ERISA-covered group health plans by the Affordable Care Act."). It is counterintuitive to suggest that an amendment that intends to strengthen ERISA regulations for disability plans by drawing on prior health plan regulations would simultaneously (and silently) weaken regulations for the very health plan scheme it sought to emulate.

Second, while the April 2018 amendments focus on heightening protection for disability claimants, the Department has also indicated approval of notice requirements in all contexts. In fact, in promulgating the amendments, the Department stated that it "believes that notices of adverse benefit determinations on review for other benefit types [such as health benefits] would be required to include some disclosure about any applicable contractual limitations period." *Id.* Accordingly, "the Department would consider the inclusion of the information in paragraph (j)(4)(ii) to be an appropriate disclosure for all plan types." *Id.* In sum, the Department of Labor's commentary in promulgating the April 2018 amendments signals strong support for contractual limitations notice requirements for *all* benefit determinations.

### III.   REMEDY FOR NONCOMPLIANCE

Having determined that the plain language of subsection (g)(1)(iv) still requires plan administrators to disclose limitations provisions in final denial letters, even in light of the April

11

2018 amendments, the court turns now to remedies. "[T]here are two potential consequences for a violation of the regulation." *William G.*, 2017 WL 2414607, at *9. The court could conduct an equitable tolling analysis to determine if Plaintiffs were on notice of their right to file and were prevented from doing so by extraordinary circumstances. *See Wilson v. Standard Ins. Co.*, 613 F. App'x 841, 844 (11th Cir. 2015) (unpublished). Alternatively, the predominant approach would find the Plan's time limit unenforceable against Plaintiffs. *See Mirza*, 800 F.3d at 137 ("The better course here is to set aside the plan's one-year deadline for filing suit."); *Moyer*, 762 F.3d at 507 ("[A] notice that fails to substantially comply with these [§ 1133] requirements does not trigger a time bar contained within the plan." (citation omitted)).

This court agrees with the First and Third Circuits that imposing equitable tolling, instead of rendering the limitations provision unenforceable, "'would render hollow the important disclosure function of § 2560.503-1(g)(1)(iv),' as plan administrators would then 'have no reason at all to comply with their obligation to include contractual time limits for judicial review in benefit denial letters.'" *Santana-Díaz*, 816 F.3d at 184 (quoting *Mirza*, 800 F.3d at 137). Allowing plan administrators to "dodge this simple regulatory obligation . . . would . . . effectively make section 2560.503-1(g)(1)(iv) a 'dead letter.'" *Santana-Díaz*, 816 F.3d at 184. To avoid this outcome, the court deems the Plan's three-year limitations provision unenforceable.

Where no contractual time limit applies to an ERISA case, we turn instead to "the most closely analogous statute of limitations under state law." *Salisbury v. Hartford Life & Accident Ins. Co.*, 583 F.3d 1245, 1247 (10th Cir. 2009) (citation omitted). In Utah, the most analogous statute of limitations for an ERISA plan is the six-year time limit for a breach of contract action. *Michael C.D. v. United Healthcare*, No. 2:15-cv-306-DAK, 2016 WL 2888984, at *2 (D. Utah May 17, 2016) (citing Utah Code § 78B-2-309(2)). Plaintiffs filed this action on March 26, 2021, well

within the six-year statute of limitation. As a result, Plaintiffs' action was timely filed, and the court DENIES Defendants' motion to dismiss.

## ORDER AND CONCLUSION

For the foregoing reasons, the court finds that Plaintiffs' action is not time-barred by the Plan limitations provision. Thus, Defendants' Motion to Dismiss (ECF No. 19) is hereby DENIED.

DATED March 30, 2022.

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge